## STATE OF OREGON,
*Respondent,*

*v.*

## JALANGO ABELL HICKS,
*Appellant.*

(91-04-31803; CA A73694)

852 P2d 894

Hari Nam S. Khalsa, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Bob Graves, Certified Law Student, Salem.

Before Warren, Presiding Judge, and Rossman and Edmonds, Judges.

ROSSMAN, J.

### ROSSMAN, J.

After a jury trial, defendant was convicted of riot, ORS 166.015(1), and assault in the second degree. ORS 163.175. On appeal, he seeks reversal of the riot conviction, contending that there was insufficient evidence to convict him. We affirm.

The crime of riot is defined in ORS 166.015:

"(1) A person commits the crime of riot if while participating with five or more other persons the person engages in tumultuous and violent conduct and thereby intentionally or recklessly creates a grave risk of causing public alarm."

Here, there is evidence that the victim, dressed as a gang member, approached a number of rival gang members, including defendant, in a grocery store. Harris, one of defendant's companions, immediately began beating the victim. Defendant and a second companion, Carter, joined Harris in the beating. Defendant was seen hitting the victim with his fists and with a metal chair. Approximately seven or eight other gang members crowded around the victim and his attackers in a semicircle, shouting encouragement to defendant, Harris and Carter.

In attacking the sufficiency of this evidence, defendant claims that he participated with only two other people, Harris and Carter, in beating the victim and that the rest of his fellow gang members were "mere spectators."

■ More is required to sustain a riot conviction than simply a showing that bystanders or spectators gathered around a fight.

" 'It must be shown that the rioters were involved in a common disorder; it is not enough to show that numerous individuals were engaged in similar unrelated activities. Mere presence without taking part *by word or deed* is not participation.

" 'The term "tumultuous and violent conduct" is intended to represent more than mere loud noise or disturbance. The language is designed to imply *terroristic mob behavior involving ominous threats* of personal injury and property damage.' " *State v. Goodwill*, 35 Or App 293, 297, 581 P2d 113 (1978), *rev den* 285 Or 1 (1979), *quoting*

Proposed Oregon Criminal Code 212, Commentary § 218 (1970). (Emphasis supplied.)[1]

■ Applying this standard, we conclude that the evidence supports a jury finding that defendant engaged in "tumultuous and violent conduct" and that he did so with five or more other persons. He and two other persons beat the victim. The jury was entitled to infer, from the fact that the crowd that gathered around was made up of fellow gang members and from the manner in which they shouted their encouragement of the beating of the victim, who was a rival gang member, that the participants were acting in concert. By cheering on the attack, the crowd encouraged the victim's beating. By surrounding the victim, they discouraged the victim's escape. The jury could have found that those activities, in a public grocery store, recklessly created a grave risk of causing public alarm. There was sufficient evidence for the jury to find defendant guilty of riot.

Defendant also seeks vacation of the consecutive sentence for the riot conviction, contending that the commission of that crime was merely incidental to the commission of the assault. Because he did not preserve that claim of error in the trial court, we do not address it. *State v. O'Neall*, 115 Or App 62, 836 P2d 758, *rev den* 314 Or 574 (1992); *State v. Crane*, 109 Or App 217, 817 P2d 771 (1991).

Affirmed.

---

[1] *State v. Goodwill* was overruled on other grounds by our decision in *State v. Woodley*, 88 Or App 493, 746 P2d 227 (1987). The Supreme Court reversed that decision in *State v. Woodley*, 306 Or 458, 760 P2d 884 (1988).