2011 UT App 334

**LAYTON CITY, Plaintiff and Appellee,**

v.

**Sherri Lee TATTON, Defendant and Appellant.**

No. 20100264–CA.

Court of Appeals of Utah.

Sept. 29, 2011.

Jeremy M. Delicino, Salt Lake City, for Appellant.

Clinton R. Drake, Layton City, for Appellee.   ·

Before Judges ORME, VOROS, and CHRISTIANSEN.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 Defendant Sherri Lee Tatton challenges her conviction for disorderly conduct, *see* Utah Code Ann. § 76–9–102 (2008).[1] We affirm.

¶ 2 In May 2009, a woman (Driver) drove into the east entrance of the Costume Castle parking lot, owned by Defendant and Defendant's husband, and parked her car. Ignoring several signs indicating that the parking lot was reserved for patrons of Costume Castle, Driver then walked to a pizza parlor adjacent to the parking lot. Defendant saw Driver leave her car and followed her to the pizza establishment. According to an employee of the pizza parlor, Defendant entered the store and began screaming profanities at Driver and yelling at her to move her car. The employee testified that Driver began apologizing and backing away from Defendant. The employee asked Defendant to leave the restaurant several times; when she did not respond to his requests, he told her that if she did not leave, he would call the police. Within a short time, Driver returned to her vehicle and backed out of the parking spot. When Driver tried to drive forward to leave the parking lot by the west exit, Defendant stepped in front of the vehicle and refused to let Driver drive through the parking lot, insisting instead that Driver back out of the parking lot in order to leave the lot on the same side she had entered. Unwilling to back out of the parking lot onto a busy street, Driver tried to leave via the safer exit, but Defendant continued to stand in the way. Driver then called the police for assistance.

¶ 3 Layton City subsequently charged Defendant with one count of disorderly conduct, *see id.,* and one count of criminal trespass, *see id.* § 76–6–206(2)(a) (Supp.2011). The disorderly conduct charge was based on subsections (1)(b)(ii) or (1)(b)(iv) of Utah Code section 76–9–102, which provide that a per-

1.  For the convenience of the reader and because the provisions in effect at the relevant times do not differ materially from the statutory provisions currently in effect, we cite to the current version of the Utah Code.

son is guilty of disorderly conduct if, "intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he: . . . (ii) makes unreasonable noises in a public place; . . . or (iv) obstructs vehicular or pedestrian traffic." *Id.* § 76–9–102(1)(b)(ii), (iv) (2008). The jury acquitted Defendant of criminal trespass but convicted her of disorderly conduct.

## I. Jury Instructions

¶ 4 Defendant argues that the trial court erred by refusing to give three jury instructions. This presents a question of law that we review for correctness. *See State v. Messer,* 2007 UT App 166, ¶ 9, 164 P.3d 421.

■ ¶ 5 Defendant first argues that the trial court erred by denying her request to instruct the jury that the term "vehicular traffic" necessarily contemplates more than one vehicle.[2] In support of her contention that a single car does not constitute "vehicular traffic" under the disorderly conduct statute, she relies on Connecticut and New York cases.[3] She also quotes from the Utah Traffic Code, which defines "traffic" as "pedestrians, ridden or herded animals, vehicles, and other conveyances either singly or together *while using any highway for the purpose of travel.*" Utah Code Ann. § 41–6a–102(62) (2010) (emphasis by Defendant).[4]

¶ 6 The Utah Traffic Code's definition of traffic as including "vehicles . . . either singly or together," *id.,* defeats Defendant's argument that a single vehicle does not constitute "vehicular traffic." It also defeats her argument that the trial court erred by failing to give a jury instruction defining "vehicular traffic" as excluding a single vehicle.

■ ¶ 7 Defendant next argues that the trial court erred by failing to instruct the jury that the intent to cause public inconvenience, annoyance, or alarm, *see* Utah Code Ann. § 76–9–102(1)(b) (2008), had to be Defendant's *predominant* intent. Defendant states that "[s]tatutes similar to Utah's disorderly conduct statute have been frequently challenged as impermissibly vague," and in support of her contention, she cites to *Colten v. Commonwealth,* 467 S.W.2d 374 (Ky.1971), *aff'd,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (addressing the constitutionality of a statute similar to Utah's disorderly conduct statute, as well as the sufficiency of the evidence in that case). Thus, it appears that Defendant is actually challenging the constitutionality of Utah's disorderly conduct statute on the ground of vagueness. Defendant also broadly claims that "there was ample evidence to suggest that the defendant was motivated by the desire to protect her property."

---

**2.** Defendant mentions in her brief that the trial court erred by failing to grant her motion for a directed verdict on the ground that the obstruction of a single vehicle does not constitute "vehicular traffic." However, she does not develop this claim and instead focuses on her jury instruction argument.

**3.** As the City points out, we are not bound by these cases. In any event, the cases are factually quite different from our case and, thus, do not help Defendant. In *State v. Anonymous,* 33 Conn.Supp. 93, 363 A.2d 772 (Conn.C.P.1976), the court held that a defendant who prevented someone from getting out of a car did not obstruct traffic because, under Connecticut law, "traffic" refers to "the flow of pedestrians or vehicles along a street or highway; it does not apply to a single individual getting out of his car." *Id.* at 775. In *Seymour v. Seymour,* 56 Misc.2d 546, 289 N.Y.S.2d 515 (N.Y.Fam.Ct. 1968), the court dismissed a disorderly conduct petition based on a defendant's attempt to force his wife's car off the road with his vehicle, stat-

ing that the statute's prohibition on "obstructing vehicular traffic" refers to "the blocking of highways or thoroughfares for extended periods of time to the public's inconvenience." *Id.* at 516, 518. Although Defendant points out that the statute at issue in *Seymour* was almost identical to the Utah statute we consider here, the *Seymour* court's ruling did not address the issue in this case, i.e., whether a single car could constitute "vehicular traffic."

**4.** Defendant emphasized the phrase "while using any highway for the purpose of travel" in her brief but did not develop any argument related to this portion of the statutory definition of "traffic." Although the prosecutor mentioned this topic briefly during the discussion on Defendant's motion for directed verdict, Defendant did not request a directed verdict on this ground below or otherwise focus her defensive strategy on the fact that she had no involvement with the victim's vehicle on "any highway." Because Defendant did not raise the issue below or develop this argument in her brief, we do not consider it.

¶ 8 We may decline to reach the merits of issues that are inadequately briefed. *See* Utah R.App. P. 24 (setting forth briefing requirements). "Briefs must contain reasoned analysis based upon relevant legal authority. An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *State v. Sloan*, 2003 UT App 170, ¶ 13, 72 P.3d 138 (internal quotation marks omitted). That is the case here.

¶ 9 Defendant does not develop her vagueness challenge to the statute's intent element, instead referring to her constitutional right to protect her property. Furthermore, while relying on the case as her primary authority, she does not distinguish the *Colten* court's ruling that "the statute is not void for overbreadth or vagueness." 467 S.W.2d at 378. *See Colten v. Kentucky*, 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) ("[W]e [are not] convinced that the statute is either impermissibly vague or broad[.]"). We are reluctant, to say the least, to strike down a statute as unconstitutional based on a United States Supreme Court case upholding a similar Kentucky statute against a constitutional challenge based on overbreadth and vagueness. In addition, to the extent that Defendant is now raising a sufficiency of the evidence argument, she made no attempt to marshal the evidence. *See State v. Boyd*, 2001 UT 30, ¶ 13, 25 P.3d 985 (stating that, when challenging a jury's verdict, a party must "marshal the evidence in support of the verdict and then demonstrate that the evidence is insufficient when viewed in the light most favorable to the verdict") (citation and internal quotation marks omitted). Accordingly, because Defendant's argument is not clearly presented or adequately supported, we decline to reach the merits of this issue. *See* Utah R.App. P. 24(a)(9) (requiring an appellant's brief to contain "contentions and reasons" that are supported by citation to authority); *State v. Gomez*, 2002 UT 120, ¶ 20, 63 P.3d 72 (explaining that a "reviewing court is entitled to have the issues clearly defined with pertinent authority cited") (citation and internal quotation marks omitted).

¶ 10 Defendant also argues that the trial court erred by failing to instruct the jury on her right to use force to defend her property. *See* Utah Code Ann. § 76-2-406(1)(a) (Supp.2010) ("A person is justified in using force, other than deadly force, against another when and to the extent that the person reasonably believes that force is necessary to prevent or terminate another person's criminal interference with real property[5] or personal property ... lawfully in the person's possession[.]"). Defendant contends that her verbal aggression should be considered as the use of force and, as a result, her verbal aggression constituted a lawful exercise of her right to protect her property from Driver's trespass. The trial court acknowledged that an individual is allowed "to use force to defend property against unreasonable interference" but pointed out that Defendant's conduct prevented Driver from leaving, Defendant being adamant that Driver had to leave the parking lot by backing onto a busy highway rather than by driving forward out of another parking lot exit and onto a safer street.

¶ 11 Defendant's argument is unpersuasive in light of the facts. Here, once Driver was aware of the problem, she attempted to leave the parking lot. Defendant not only continued to yell at Driver, she stood in front of Driver's car, blocking Driver's attempts to leave and thus extending—rather than terminating—Driver's trespass. Defendant's actions did not constitute a "defense" of her property, nor was her conduct calculated to "terminate [Driver's] interference" with property. Under these circumstances, we see no error in the trial court's decision to deny Defendant's request for a jury instruction on her right to use force to defend her property, even if we were to accept that yelling at someone is the kind of force contemplated in the statute.

## II. Unreasonable Noises

¶ 12 Defendant also argues that the statutory language that prohibits making "unreasonable noises in a public place," Utah Code Ann. § 76-9-102(1)(b)(ii) (2008), is un-

---

5. Driver was cited for trespassing on Defendant's property.

constitutionally overbroad and vague because it "effectively criminalize[s] protected speech." Whether a statute is unconstitutionally overbroad or vague is a question of law that we review for correctness. *See State v. Norris,* 2007 UT 6, ¶ 10, 152 P.3d 293. Relying on *Logan City v. Huber,* 786 P.2d 1372 (Utah Ct.App.1990), Defendant contends that we have already declared unconstitutional the "unreasonable noises" subsection of the disorderly conduct statute. However, *Logan City* considered a disorderly conduct ordinance that contained different language than that of the statute now before us.[6] *See id.* at 1374 n. 7. Therefore, *Logan City* is not dispositive of the constitutional issue.

¶ 13 Defendant also relies on the reasoning in *Logan City* to support her contention that the current statute is unconstitutional. The court in that case reasoned that the phrase "obscene or abusive language" in the ordinance applied to "all harsh insulting words that recklessly create a risk of inconvenience, annoyance or alarm." *Id.* at 1375–76. The court held that "[t]his type of expansive, content-based ordinance" applied to and punished a "significant amount of protected verbal expression, including criticism and challenge, vulgarities and remonstrations"; therefore, it was unconstitutionally overbroad. *Id.* at 1376–77. Defendant contends that the current statute has the same flaws and is unconstitutional for the same reasons.[7]

¶ 14 Defendant's argument based on the reasoning in *Logan City* is unpersuasive because the ordinance at issue in *Logan City* is considerably different than the current statute. The ordinance prohibited " 'engag[ing] in abusive or obscene language or mak[ing] obscene gestures in a public place,' " *id.* at 1374 (quoting Logan City, Utah, Ordinance 12–8–9(2)(D) (Feb. 19, 1987)), while the current statute prohibits "mak[ing] unreason-

able noises in a public place," Utah Code Ann. § 76–9–102(1)(b)(ii). Unlike the ordinance, the language in the current statute is content-neutral in that it does not target the content of expression but rather its volume. Furthermore, the reasonable person standard incorporated into the statute limits the reach of the statutory language and creates a reasonable restriction on the *manner* of expression without reaching the expression itself. Accordingly, we conclude that the statutory language in Utah Code section 76–9–102(1)(b)(ii) is not unconstitutionally overbroad. *See State v. Carrick,* 2010 WL 5549046, ¶¶ 14–15 (Ohio Ct.App. Dec. 29, 2010) (considering a constitutional challenge to a similar statute and stating, "to the extent that [the statute] pertains to expression protected by the First Amendment, it creates a reasonable restriction on the manner of expression and is not unconstitutionally overbroad"), *cert. granted,* 128 Ohio St.3d 1443, 944 N.E.2d 693 (2011).

■ ¶ 15 In addition, Defendant apparently contends that the statute is unconstitutional as applied to her because, during the trial, the prosecution did not mention the volume of Defendant's yelling or the nature of the sound, instead focusing on Defendant's use of "expletives, harsh language, and vulgarities"—in other words, speech that Defendant argues we had previously held to be constitutionally protected, *see Logan City,* 786 P.2d at 1376. Defendant's as-applied challenge to the statute is unpersuasive. The record was replete with evidence that Defendant was not just using "expletives, harsh language, and vulgarities" but that she was also doing so at high volume. A witness testified that, within the confines of the pizza restaurant, she was yelling in a "full-on scream ... using her best scream voice, top of her lungs." This readily qualifies as "unreasonable noise[ ] in a public place." Accordingly, we conclude

---

6. In *Logan City v. Huber,* 786 P.2d 1372 (Utah Ct.App.1990), the court considered a municipal ordinance that was identical to the disorderly conduct statute in effect at that time, *see id.* at 1374 n. 7 (citing Utah Code Ann. § 76–9–102(1)(b)(iv) (1978)) (providing that a person is guilty of disorderly conduct if, with the requisite intent, "[h]e engages in abusive or obscene language or makes obscene gestures in a public place"). After *Logan City* was decided, the Utah

Legislature amended the disorderly conduct statute to its current version—the one we now consider. *See* Utah Code Ann. § 76–9–102(1)(b)(ii) (2008).

7. Defendant does not develop her argument that the statute is unconstitutionally vague, and we do not consider it.

that Utah Code section 76–9–102(1)(b)(ii) is not unconstitutional on its face or as applied in this case.

¶ 16 Affirmed.

¶ 17 WE CONCUR: J. FREDERIC VOROS JR., and MICHELE M. CHRISTIANSEN, Judges.