PEOPLE v TARAVELLA

Docket No. 72567. Submitted February 15, 1984, at Detroit.—Decided
April 2, 1984.

Angelo Taravella was charged in the 37th District Court with
unlawfully making obscene or harassing telephone calls. Prior
to trial, he brought a motion to quash on the ground that the
statute under which he was charged is unconstitutionally vague
and overbroad. The motion was denied. Following a bench trial,
defendant was convicted and sentenced, Thomas E. Kennedy, J.
Defendant appealed to the Macomb Circuit Court, raising as
the sole issue the constitutionality of the statute under which
he was convicted. The circuit court found the statute to be
constitutionally sound and affirmed defendant's conviction,
Raymond R. Cashen, J. Defendant applied for leave to appeal
to the Court of Appeals. Leave was denied. Defendant then
sought leave to appeal to the Supreme Court. The Supreme
Court, in lieu of granting leave to appeal, remanded to the
Court of Appeals for consideration as on leave granted, 417
Mich 1046 (1983). *Held:*

Michigan's statute on the malicious use of service is not
unconstitutionally vague or overbroad. The words employed in
the statute are sufficient to provide an individual with fair
notice of the conduct which is proscribed, and the intent
requirement of the statute applies to the conduct with which
defendant was charged.

Affirmed.

1. CONSTITUTIONAL LAW — STATES — REGULATION OF SPEECH OR
EXPRESSION.
    The extent to which a state may regulate speech or expression in

REFERENCES FOR POINTS IN HEADNOTES

[1] 16A Am Jur 2d, Constitutional Law §§ 503, 604.
    Supreme Court's views as to the federal legal aspects of the right of
    privacy. 43 L Ed 2d 871.
[2, 5] 16A Am Jur 2d, Constitutional Law §§ 460-463.
    Supreme Court's views as to overbreadth of legislation in connec-
    tion with First Amendment rights. 45 L Ed 2d 725.
[3] 74 Am Jur 2d, Telecommunications §§ 204, 206.
    Misuse of telephone as minor criminal offense. 97 ALR2d 503.
[4] 73 Am Jur 2d, Statutes §§ 204, 250.

order to protect others from hearing it is dependent upon a showing that substantial privacy interests of the listener are being invaded in an essentially intolerable manner; thus, the privacy interest of a listener in the privacy of his home will be accorded greater protection, along with the commensurate restrictions on unwanted discourse, than would be permitted in a public forum.

2. CONSTITUTIONAL LAW — STATUTES — REGULATION OF SPEECH OR EXPRESSION — OVERBREADTH.

A reviewing court, when faced with an overbreadth challenge to a statute which regulates in the area of the First Amendment, must look to the statute to determine whether it regulates only spoken words, rights of association or communicative conduct; the quantum of interference which will be sustained in the area of free speech and expression depends to an extent on the type of behavior sought to be regulated by the statute; where conduct and not merely speech is involved, the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

3. TELECOMMUNICATIONS — MALICIOUS USE OF SERVICES — CRIMINAL LAW — INTENT.

It is the malicious intent with which a person makes a telephone call that establishes the criminality of conduct under the statute prosecuting the malicious use of services provided by a communications common carrier, not the listener's perception or characterization of the nature of the call (MCL 750.540e; MSA 28.808[5]).

4. STATUTES — JUDICIAL CONSTRUCTION.

General rules of statutory construction require that each word, phrase and clause be construed in a manner which will give effect to each and render none nugatory.

5. TELECOMMUNICATIONS — MALICIOUS USE OF SERVICES — CONSTITUTIONAL LAW.

Michigan's statute proscribing the malicious use of telephone and telegraph services is not unconstitutionally vague or overbroad (MCL 750.540e; MSA 28.808[5]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Don L. Milbourn,* Chief Appellate

Lawyer, and *Robert John Berlin,* Assistant Prosecuting Attorney, for the people.

*Kevin R. Armstrong,* for defendant on appeal.

Before: ALLEN, P.J., and V. J. BRENNAN and N. J. KAUFMAN,* JJ.

ALLEN, P.J. We are asked to determine whether the Michigan statute proscribing the malicious use of telephone and telegraph services, MCL 750.540e; MSA 28.808(5), is unconstitutionally overbroad and vague. The question presented is of first impression and comes to us on the following facts.

On September 8, 1980, defendant was charged in the 37th District Court with unlawfully making obscene or harassing telephone calls, contrary to MCL 750.540e; MSA 28.808(5). Prior to trial, defendant brought a motion to quash, challenging the statute as unconstitutionally vague and overbroad. On February 19, 1981, the motion was denied. Following a bench trial, defendant was convicted and sentenced. He appealed to the circuit court, raising as the sole issue the constitutionality of the statute under which he was convicted. By order dated May 19, 1982, defendant's conviction was affirmed, the circuit court finding the statute constitutionally sound. Defendant's application for leave to appeal to this Court was denied on August 6, 1982. However, on June 30, 1983, in lieu of granting leave to appeal, the Supreme Court remanded to this Court for consideration as on leave granted. 417 Mich 1046 (1983).

The statute under which defendant was prose-

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

cuted[1] added a new section (540e) to laws regulating the use of communication systems. 1969 PA 328, effective March 20, 1970. Section 540e provides:

"(1) Any person is guilty of a misdemeanor who maliciously uses any service provided by a communications common carrier with intent to terrorize, frighten, intimidate, threaten, harass, molest or annoy any other person, or to disturb the peace and quiet of any other person by any of the following:

"(a) Threatening physical harm or damage to any person or property in the course of a telephone conversation.

"(b) Falsely and deliberately reporting by telephone or telegraph message that any person has been injured, has suddenly taken ill, has suffered death, or has been the victim of a crime, or of an accident.

"(c) Deliberately refusing or failing to disengage a connection between a telephone and another telephone or between a telephone and other equipment provided for the transmission of messages by telephone, thereby interfering with any communications service.

"(d) Using any vulgar, indecent, obscene or offensive language or suggesting any lewd or lascivious act in the course of a telephone conversation.

"(2) Any person violating this section may be imprisoned for not more than 6 months, or fined not more than $500.00, or by both. An offense shall be committed under this section if the message either originates or terminates or both originates and terminates in this state and may be prosecuted at the place of origination or termination."

Defendant argues that the statute violates the state and federal constitutions in two respects: first, that the statute is overbroad in that it en-

[1] Specifically, defendant's conduct in repeatedly calling a female salesperson at a furniture store and offering her $500 if he could "eat [her] pussy" falls within the purview of MCL 750.540e(1)(d); MSA 28.808(5)(1)(d).

compasses constitutionally protected speech and conduct within its scope ·and, second, that the statutory language utilized to describe the proscribed speech is vague and therefore fails to give fair notice of the proscribed activity. This challenge to the statute proscribing the malicious use of services provided by a communications common carrier represents a question of first impression in this state.

Constitutional guarantees of free speech set limits upon the extent to which states may punish or criminalize the use of words or language. *Chaplinsky v New Hampshire,* 315 US 568; 62 S Ct 766; 86 L Ed 1031 (1942). In keeping with that principle and in order to promote the free exchange of ideas and information, a state statute which regulates speech and expression must be narrowly drawn so as not to infringe on constitutionally protected speech. *Cantwell v Connecticut,* 310 US 296; 60 S Ct 900; 84 L Ed 1213 (1940); *Gooding v Wilson,* 405 US 518; 92 S Ct 1103; 31 L Ed 2d 408 (1972). The extent to which a state may regulate such expression is "dependent upon a showing that substantial privacy interests [of others] are being invaded in an essentially intolerable manner". *Cohen v California,* 403 US 15, 21; 91 S Ct 1780; 29 L Ed 2d 284 (1971). Thus, the privacy interest of a listener in the privacy of his home will be accorded greater protection, along with the commensurate restrictions on unwanted discourse, than would be permitted in a public forum. *Cohen, supra; Rowan v United States Post Office Dep't,* 397 US 728; 90 S Ct 1484; 25 L Ed 2d 736 (1970).

Does the statute impermissibly include constitutionally protected speech and conduct within its proscriptions? When faced with an overbreadth challenge to a statute which regulates in the area

of the First Amendment, it is important for the reviewing court to look to the statute to determine whether it regulates only spoken words, rights of association or communicative conduct. *Broadrick v Oklahoma,* 413 US 601; 93 S Ct 2908; 37 L Ed 2d 830 (1973). The quantum of interference which will be sustained in the area of free speech and expression depends to an extent on the type of behavior sought to be regulated by the statute. As noted in *Broadrick, supra,* p 615:

"But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction— cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. *Cf. Alderman v United States,* 394 US 165, 174-175; [89 S Ct 961, 966-967; 22 L Ed 2d 176] (1969). To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

While Michigan's misuse of communications service statute does involve a speech component, we believe that the statute clearly establishes sanctions for conduct, as opposed to pure speech. The terms of the statute are not directed at the restric-

tion of the communciation of thoughts or ideas but are aimed at the regulation of specific conduct: the malicious use of communicative services. Thus, we will not invalidate this conduct-oriented criminal statute unless the overbreadth is not only real, but substantial as well.

Do telephone calls by an angry parent to a student with failing grades, by a dissatisfied consumer or by a disgruntled constituent, if accompanied by language thought to be "offensive" by the recipient of the call, subject the caller to criminal sanctions under the statute? In each case, defendant claims, the caller's exercise of his constitutional right of free speech might "annoy", "frighten" or be considered "obscene" or "harassing" by the listener. Thus, under defendant's interpretation of the statute, it is the listener's perception or characterization of the nature of the call which would control. We disagree. The statute clearly provides that the focus is on the caller; it is the malicious intent with which the transmission is made that establishes the criminality of the conduct. See, *e.g., Constantino v State,* 243 Ga 595; 255 SE2d 710 (1979). Thus, irrespective of the listener's subjective perceptions, without the necessary intent on the part of the caller the use of obscene words alone would not fall within the statutory proscriptions.

Given the substantial interest of the state in protecting the privacy of its citizens from unwanted intrusions and the limiting requirements of the statute that the caller must maliciously use a communications service with the requisite intent, we perceive no real and substantial overbreadth problem. The statute is not substantially overbroad and to the extent that an overbreadth problem should arise, the appropriate remedy is to

handle such cases on an individual basis to prevent any restriction on constitutionally protected speech rather than striking down *in toto* a statute prohibiting constitutionally unprotected conduct. *Broadrick, supra.*

In conjunction with his claim that the intent requirement cannot "save" the overbroad statute, defendant relies on *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419, *reh den* 414 US 881; 94 S Ct 26; 38 L Ed 2d 128 (1973), and *People v Neumayer,* 405 Mich 341; 275 NW2d 230 (1979), to support his contention that the terms utilized in the statute, *i.e.,* vulgar, obscene, lewd, are unconstitutionally vague. We find defendant's reliance on the cited cases to be misplaced. Both *Miller* and *Neumayer* involved obscenity statutes which involved the regulation of speech. Unlike those statutes, the Michigan use of services statute regulates specific conduct: the malicious use of services provided by a communications common carrier.

We find that the words employed in the statute are sufficient to provide an individual with fair notice of the conduct which is proscribed. Precision is not required; due process is satisfied if the statutory language conveys a sufficiently detailed warning when measured by common understanding and practice. *United States v Petrillo,* 332 US 1; 67 S Ct 1538; 91 L Ed 1877 (1947). An individual of ordinary intelligence would not have to guess as to the type and scope of conduct prohibited under our statute, and giving the words their common, everyday meaning, we believe the statute provides clear warning of the proscribed conduct.

Notwithstanding defendant's claims to the contrary, we find that the intent requirement of the statute applies to the conduct with which he was charged. Defendant asserts that the use of the

disjunctive "or" prior to the last clause in section (1) indicates that the Legislature created two separate and distinct offenses: one requiring the specific intent to terrorize or annoy and the other based on the use of a communication service which disturbs another's peace and quiet through the use of offensive language. We will not read the statutory language in such a tortured manner to subvert the clear import of the language utilized.

General rules of statutory construction require that each word, phrase and clause be construed in a manner which will give effect to each and render none nugatory. *People v Malachi White,* 81 Mich App 226; 265 NW2d 100 (1978). In the present case, we find that the statute does not create two separate offenses, one requiring specific intent, the other not. Section (1) sets forth the conduct which is prohibited (the malicious use of a communications service with intent), while the following subsections enumerate the specific types of activities which, taken in conjunction with the basic requirements of (1), provide a basis for a criminal prosecution under the statute. Thus, one who acts with either the intent to annoy or terrorize or with the intent to disturb the peace and quiet of another and who *further* does one of the activities listed in subsections (a) through (d) may be guilty of the misdemeanor offense of malicious use of service.

Finally, we find defendant's reliance on *State v Keaton,* 371 So 2d 86 (Fla, 1979); *Walker v Dillard,* 523 F2d 3 (CA 4, 1975); *Radford v Webb,* 446 F Supp 608 (WD NC, 1978), *aff'd* 596 F2d 1205 (CA 4, 1979), to be misplaced. None of the cited cases involved statutes which contained a specific intent requirement similar to that included in MCL 750.540e; MSA 28.808(5). The challenged statutes prohibited the use of language, be it obscene, lewd,

lascivious or vulgar, alone. Given the constitutional protection accorded speech and the limitations upon state regulations, such statutes clearly impinged upon protected expression by punishing the mere use of obscene language. See, *e.g., Stanley v Georgia,* 394 US 557; 89 S Ct 1243; 22 L Ed 2d 542 (1969).

We note, however, that other jurisdictions which have statutes which include an intent requirement similar to that included in Michigan's malicious use of service statute have uniformly rejected constitutional attacks such as those launched by defendant. For further discussion on this issue see the annotations at 95 ALR3d 411 and 50 ALR Fed 541. The common theme of the statutes in those jurisdictions is that the statutes were aimed at the regulation of conduct, the use of telephone services, and not the suppression of speech, expression or ideas. The Court in *Baker v State,* 16 Ariz App 463; 494 P2d 68 (1972), distinguished the obscene telephone call statute from obscenity statutes and statutes which sought to regulate the communication of thoughts and ideas by giving weight to the specific intent element and by stressing that constitutionally unprotected conduct was involved. Other authorities following this view include: *Caldwell v State,* 26 Md App 94; 337 A2d 476 (1975); *State v Zeit,* 22 Or App 480; 539 P2d 1130 (1975); *Alobaidi v State,* 433 SW2d 440 (Tex Crim App, 1968), *cert den* 393 US 943; 89 S Ct 313; 21 L Ed 2d 281 (1968); *Von Lusch v State,* 39 Md App 517; 387 A2d 306 (1978); *State v Jaeger,* 249 NW2d 688 (Iowa, 1977); *State v Larsen,* 37 Or App 425; 588 P2d 41 (1978); *People v Weeks,* 197 Colo 175; 591 P2d 91 (1979), and *Constantino v State,* 243 Ga 595; 255 SE2d 710 (1979).

In conclusion, Michigan's malicious use of ser-

vice statute, MCL 750.540e; MSA 28.808(5), is not unconstitutionally vague or overbroad. The state has a substantial interest in protecting the privacy interests of its citizens from the unwanted intrusion of verbal abuse. This interest is afforded greater constitutional protection within the private, as opposed to public, sector. *Cohen, supra.* The statute at issue is geared toward specific conduct and includes a requirement that the caller act with specific intent. Thus, we hold that MCL 750.540e; MSA 28.808(5) is constitutionally sound and affirm the decision below.

Affirmed.